NICK MAHER v. STATE, EX REL. ALLEN & JENKINS.

[FILED JULY 1, 1891.]

1. **Schools:** MONEY CAN BE DRAWN from the treasury of a school district in the payment of contractors for the erection of a school house only by orders on the treasurer signed by the director and countersigned by the moderator. (*State, ex rel. Cook, v. Bloom*, 19 Neb., 562.

2. ———: MANDAMUS. Where the treasurer of the district, having funds in his hands for that purpose, refuses to pay such order, issued in full compliance with the provisions of law, peremptory *mandamus* will enforce the payment.

ERROR to the district court for Dakota county. Tried below before POWERS, J.

*Jay Bros.*, and *Mell C. Beck,* for plaintiff in error, cited: *People v. Peters,* 4 Neb., 254; *Brown v. Sch. Dist.,* 10 Atl. Rep. [N. H.], 119; 1 Dillon, Mun. Corp., sec. 299; *Sch. Dist. v. Atherton,* 12 Metc. [Mass.], 105; *Morrison v. Lawrence,* 98 Mass., 219; *Mayhew v. Gay Head,* 13 Allen [Mass.], 129; *McCortle v. Bates,* 29 O. St., 422; *State, ex rel. Reed, v. Ramsey,* 8 Neb., 293; *Fluty v. Sch. Dist.,* 4 S. W. Rep. [Ark.], 278.

*Barnes & Tyler,* contra, cited: *Everts v. Dist.,* 41 N. W. Rep. [Ia.], 478; *Capital Bank v. Sch. Dist.,* 42 N. W. Rep. [Dak.], 774; *Sanborn v. Sch. Dist.,* 12 Minn., 1; *Robbins v. Sch. Dist.,* 10 Id., 268; *State v. Bloom,* 19 Neb., 565, and other cases referred to in opinion.

COBB, CH. J.

The defendants in error, on July 21, 1890, made application to said court for a peremptory writ of *mandamus* against the treasurer of school district No. 11 of said county, to enforce the payment of a certain warrant for the sum of $125, dated July 14, 1890, and setting up:

"That the plaintiffs and relators are a copartnership, a firm organized for the purpose of carrying on business in the state of Nebraska, and not incorporated; and are so doing business in this state, as contractors and builders, and are entitled to sue and act in the capacity of plaintiffs and relators herein, in such firm name, to-wit, Allen & Jenkins.

"Second—That school district No. 11 is a school district of Dakota county, Nebraska, duly organized and existing under the laws of the state of Nebraska, and as such corporation has been so organized for more than ten years last past.

"That the defendant, Nick Maher, is the treasurer of

said school district No. 11, duly elected and qualified, and is now acting as such officer.

"That John A. Williams is director, and W. B. Ammerman is moderator of school district No. 11.

"Third—That on and prior to the 12th day of May, 1890, there was in the treasury of said School District No. 11 the sum of $13,810.50, of which said sum more than $10,000 belong to the general fund, and was exclusive of any and all moneys in said treasury belonging to the teachers' fund, and the moneys received from the state apportionment for such teachers' fund, and the said $10,000 could, by the legal voters of said school district No. 11, be legally set off and transferred to a fund for building purposes, to erect a new school house for said district.

"That on the 12th day of May, 1890, there was held a special meeting of all the legal voters of said school district No. 11, pursuant to a petition duly and legally signed and presented to the board of said district, and in accordance with due, proper, and legal notice thereof, duly posted and given as provided by law.

"The object and purpose of said special meeting was to arrange for building a new school house in and for said school district No. 11, and at said meeting and adjourned meeting for that purpose it was determined and voted by the said school district to build and construct said school house at a cost not to exceed the sum of $10,000, and the said sum, out of the moneys so in said school district treasury, was transferred to and set apart for the purpose of building said school house, and a committee was duly appointed to let the contract to build said school house and to take charge of the construction thereof, all of which more fully appears by a copy of the records of said meetings, in the words and figures following, to-wit:

"'A special meeting of school district No. 11, county of Dakota, state of Nebraska, was held, pursuant to a call, at the school house in said district, on the 12th day of

May, 1890, at 2 o'clock P. M. Moderator in the chair. Minutes of the last meeting were read and, after amendment, were approved. The object of the meeting, as stated in the notice, was announced by the chairman to be for the purpose of arranging for the erection of a school house on the district school grounds, and the sale and removal of the old school house from its present site, and to take such other action as may be deemed necessary to facilitate such object.

"'On motion it was voted to erect a new school house at a cost not to exceed $10,000.

"'On motion it was voted that the chairman appoint a committee of three to visit the school houses in Sioux City and look over the same, and to confer with architects, and to report at the adjourned meeting. Chairman appointed as such committee S. R. Cowles, C. D. Schrever, and J. N. Peysen. On motion it was voted that the directors look up the title to block 111, now in the possession of the district, to see what defects, if any, there may be in the title to the same, and report at the adjourned meeting.

"'On motion adjourned until Saturday, May 17, 1890, at 7 o'clock P. M.

                    "'JOHN A. WILLIAMS, *Director.*

                    " ' COVINGTON, May 27, 1890.

" 'Special meeting of school district No. 11, Dakota county, called on the 12th day of May, 1890, met pursuant to adjournment.

" 'Moderator in the chair. Minutes of last meeting read and approved.

" 'Committee appointed at the last meeting to look at the school houses in Sioux City, Iowa, and to consult with an architect, reported.

" 'Report accepted and placed on file.

" 'Abstract of title of block 111, of village of Covington placed on file. On motion it was voted that the board take all necessary and proper steps to perfect the title of

the district to lot 6 in block 111.   On motion it was voted
that the board advertise and sell the old school building,
and in case the same is not sold, remove the same to north-
west corner of the grounds.

" 'On motion, it was voted to adopt the plans of the
Le Mars school house, with modifications submitted by
E. W. Loft, architect.

" 'On motion it was voted that the chairman appoint a
building committee, consisting of five members, such com-
mittee to have control of and to superintend the construc-
tion of the new school house.

" 'Chairman appointed as such committee:

" 'S. R. Cowles, J. J. Truax, J. N. Peyson, F. B.
Church, and D. Gillespie.

" 'On motion it was voted that no contract be made for
heating apparatus for a new building at present.

" 'On motion, adjourned *sine die.*

" 'JOHN A. WILLIAMS, *Director.*'

" That said committee duly advertised for bids for the
erection of said school house, according to the plans and
specifications, which had been adopted at the meeting, by
the legal voters of said school district, reserving the right
to reject any and all bids, as they lawfully might do ; that
upon the opening of said bids, and the same being unsatis-
factory, all of said bids were rejected and the contract was
finally let to the relators herein to build and construct said
school house for said school district, at the agreed price of
$8,504.56, and a proper, legal, and binding contract in
writing, was duly entered into between the said relators,
on their own part, and the said committee on the part of
said school district No. 11.

"The said sum of $8,504.56 to be paid to the relators
at such times and in such sums as the progress of the work
required.   And the said relators duly executed to the said
school district No. 11 a good and sufficient bond, which
was duly approved by the district, for the faithful per-

formance of the said contract. That said contract was entered into in good faith on the part of the said school district No. 11, and through its said committee for that purpose, under the belief that it could so do by and through said committee.

"That before the annual school meeting for the year 1890 was held in said school district No. 11, and before any work was performed or commenced or any expense incurred under the said contract, it was found that the law relating to building committees for school districts was repealed, and that the school district board was required to act in that behalf and capacity; and thereupon, at the annual meeting of the legal voters of the said school district No. 11, duly held on the 30th day of June, 1890, at which was present all of the legal voters of said school district, including the defendant herein, after the whole matter and proceedings in that behalf for the erection and construction of the said school house was laid before said meeting and discussed and thoroughly understood, the legal voters at said annual meeting duly approved the said contract so as aforesaid made, and ratified the same and ordered and directed the board to sign said contract with the relators so as to make the same legal and binding, which was accordingly done. All of which is shown by a copy of the record of said annual meeting in the words and figures following, to-wit:

"'The annual meeting of school district No. 11, county of Dakota and state of Nebraska, was held at the school grounds in said district Monday, the 30th day of June, 1890. Moderator in the chair.

"'Minutes of the last meeting and special meetings of May 12th and 17th, 1890, read and approved.

"'The report of the treasurer was read and, on motion, it was voted that a committee of three be appointed by the chair to examine the treasurer's books and vouchers.

"'Chairman appointed as such committee Messrs. Ir-

win, Dow, and Truax. The report of the director was read and adopted.

"'The following district officers were elected for the ensuing term, to-wit, John A. Williams, director.

"'On motion it was voted to have seven months school during the ensuing year, to commence on the first Monday in October, 1890.

"'On motion it was voted that the sum of $10,000 from any money in the hands of the treasurer, be set apart as a building fund to be used in the construction of a new school house now in course of erection.

"'On motion it was voted that the district treasurer and moderator be added to the building committee.

"'On motion it was voted that a sub-committee of four, consisting of Messrs. Maher, Ammerman, Truax, and Gillespie be appointed from the building committee to have immediate charge of the building of the new school house.

"'On motion, adjourned to await the report of the committee appointed to examine the treasurer's books and vouchers until Tuesday, July 1, 1890, at 7 o'clock P. M., to meet at the office of W. B. Ammerman.

"'JOHN A. WILLIAMS, *Director*.

"'July 1st, 1890.

"'The annual meeting of school district No. 11, of Dakota county, Nebraska, met pursuant to adjournment.

"'Moderator in the chair.

"'Committee appointed to examine treasurer's books and vouchers, etc., reported the same to be right.

"'On motion it was voted that the report be adopted.

"'On motion it was voted that the moderator, director, and treasurer sign the contract made by the building committee with Allen & Jenkins, for the erection of the new school house so as to make the same legal.

"'On motion it was voted that the motion heretofore adopted, to have a committee of four to have charge of the building of the new house, be rescinded.

" 'The minutes of this meeting were read and approved.
" 'Adjourned.

          " 'JOHN A. WILLIAMS, *Director.*'

"That in pursuance of the terms of the said contract,
and after the same was ratified by the said school district
and signed by the said school board, or the director and mod-
erator thereof, the relators herein commenced the construc-
tion of said school house for the said school district, and on the
14th day of July, 1890, the work thereupon had pro-
gressed so that under the terms of the said contract said
district was required to draw a warrant or order on the
treasurer, in favor of the relators, for the sum of $125, in
payment for material furnished by the relators for the
building of said school house and work and labor done
thereon by the relators, which said work and material so
furnished and performed by the relators had, before that
time, been duly examined, accepted, and approved by the
school district board, and the account therefor audited and
allowed by said board.

"The said warrant or order was drawn and is in the
words and figures following:

" '$125.00.                STATE OF NEBRASKA,
               " 'DAKOTA COUNTY, July 14, 1890.

" 'Treasurer of school district No. 11, of Dakota county:
Pay to the order of Allen & Jenkins the sum of one
hundred and twenty-five dollars out of any money in your
hands belonging to the fund for building.

" 'Countersigned:

" 'W. B. AMMERMAN, *Moderator.*
" 'No. 60.          JOHN A. WILLIAMS, *Director.*'

" That after the same was drawn and duly signed by the
director and moderator, it was duly delivered to the re-
lators herein, who are the holders and owners thereof, and
are entitled to demand and receive the payment of the
same from the defendant herein, as treasurer of the said

school district; that on the 22d day of July, 1890, the relators duly presented the said order to the defendant as such treasurer, and demanded the payment thereof, which payment was wrongfully and unlawfully refused by the said defendant, who wrongfully and knowingly and contrary to the facts in this case and his duty in the premises indorsed said order as follows, to-wit:

" 'COVINGTON, NEBRASKA, July 14, 1890.

" 'Not paid for want of funds for building purposes, and that I am liable to the district for all moneys in the treasury and cannot pay any on the contract let by the building committee.          NICK MAHER,

" ' *Treasurer of School District No. 11.*'

"The relator avers the fact to be that there is in the hands of such treasurer, the defendant herein, belonging to said school district, the sum of $10,000, as building fund, out of which said order ought to, and can be lawfully paid, and yet the said defendant, well knowing the premises, contrary to his plain duty and without any justification or excuse therefor, refused and still refuses to pay the same. The relators aver the fact to be that unless the said defendant be compelled to pay the said warrant or order by a peremptory writ of *mandamus*, issued by this court, they are without any adequate remedy in the premises, and the relators have no other adequate remedy herein.

"And afterwards, to-wit, on the 21st day of August, 1890, the defendant filed his answer to the foregoing petition, which said answer is in words and figures as follows, to-wit:

" First—The defendant has no knowledge or information as to whether the plaintiffs were a copartnership, organized for the purpose of carrying on business in this state, or that they were entitled to sue and to act in the capacity of plaintiffs in this case, and the defendant states that they have no power to bring this action; that action

of this kind can only be brought by the county superintendent of the county wherein the cause of action arises.

"Second—Defendant answering the second paragraph of plaintiff's said petition, admits that school district No. 11 of Dakota county is a school district duly organized, and existing under the laws of the state of Nebraska, and has been so organized for more than ten years last past; admits that defendant is the treasurer of said school district, duly elected and qualified, and now acting as such treasurer, and that John A. Williams, is director, and W. B. Ammerman is the moderator of said school district.

" Third—Answering the third paragraph of said petition defendant states that he admits that prior to the 12th day of May 1890, there was in the treasury of said school district, the sum of $13,810.50, but denies that $10,000 of said sum of money could be legally set off and transferred to a fund for building purposes, as set forth in said paragraph.

" Defendant admits that a pretended special meeting was held on the 12th day of May, 1890, in said district, but denies that all of the legal voters of said district were present at said school meeting, and denies that said special meeting was called pursuant to a petition duly and legally signed, and presented to the board of said school district as required by law, and denies that due, proper and legal notice of said meeting was duly posted and given as required by law, or that any notice whatever was so given; denies that at said special meeting it was voted to build and construct a school house in said district, at a cost not to exceed $10,000, and that the said sum of $10,000 was at said meeting transferred and set apart for the purpose of building such school house; admits that at the adjourned special meeting a committee was appointed to let the contract and build the said school house, but the defendant states that the chairman of said school board had no power under the law to appoint such committee, and his action in that behalf was illegal and void.

" Fourth—Defendant further states that said committee pretended to advertise for bids, and among other bids was that of the relator herein, for the sum of $7,345, and when the bids for the said school house were opened, the said committee let the contract to relator, but the said committee afterwards, acting in collusion with the relator herein, and without any authority of law whatever, added about $1,200 to the bid made by the relator, making it $8,504.56, and then let the contract to the said relator for the sum of $8,504.56, the same being far in excess of other bids made and offered by other responsible men; defendant denies that said contract was entered into in good faith, and denies that any legal contract was entered into by said school district, as in said petition set forth.

" Fifth—Defendant further answering the said petition, denies that before any work was done on the erection of said school house, the legal voters of said district approved and ratified the said contract made as aforesaid; defendant further states that the legal voters of such school district had no power to approve or ratify the said illegal contract, so made by the said illegally appointed committee, or to make the same legal and binding upon the district.

"Sixth—Defendant further states as a matter of fact, that all the money in his hands at the time of the pretended special meeting, and at the annual meeting of said district, had been secured by him as state apportionment money, belonging to the said school district, and as money paid for licenses to sell liquor in the village of Covington, the said village being located in said district, and that no part of said money could be set apart or used by the district in the erection of said school house, and that all action taken in that behalf was illegal and void.

"Seventh—Defendant denies that he unlawfully and wrongfully refused to pay the order drawn upon him by the director and moderator, set forth in the petition, but states that he refused to pay the same because there was no

money in his hands that could be properly set apart to pay the same.

"Eighth—Defendant further states that the relator has a plain and adequate remedy at law, and that the application fails to state facts sufficient to justify the granting of the writ asked by the relator.

"Ninth—Defendant denies each and every allegation in the application not otherwise answered."

The affidavit of the plaintiff in error, made in the court below on July 21, 1890, states that he is the defendant in this action and the treasurer of school district No. 11 of said county, and that as such treasurer he has in his hands the sum of $13,801.50, $440 of which was received by him as state apportionment money, and the remainder, $13,361.50, is money received from licenses to sell liquor in the village of Covington, situated in said school district.

There was a trial to the court on July 19, 1890, on the petition of the relators, the answer of respondent, the stipulation of the parties, and the evidence in the cause, the court finding for the relators and deferring the entry of judgment herein until August 5, 1890, at the request of the parties. And on August 5, 1890, upon full consideration, the court found that the relators duly entered into a contract with school district No. 11, in said county, and the legal voters thereof, at the annual meeting for said school district for the year 1890, for the erection of a school house for the use of said school district; that in pursuance of the terms of said contract the relators engaged for the erection of the same, duly entered upon the performance thereof; that on July 14, 1890, there was issued to the relators by the school board of said district the warrant mentioned in the relators' petition, in payment for work done and material furnished under said contract; that the relators duly presented the same to the respondent for payment on July 14, 1890; that respondent wrongfully, and contrary to his duties in the premises as treasurer of said

district, without any excuse therefor, and having in his
hands funds duly provided for that purpose, refused to pay
the said warrant.

It is, therefore, considered that a peremptory writ of
*mandamus* issue against the respondent, Nick Maher, as
treasurer of school district No. 11, commanding him to
forthwith pay to the relators the warrant aforesaid for the
sum of $125, and pay the cost of this proceeding.

· To which findings and judgment the respondent excepted
on the record, moved for a new trial, which was overruled,
and assigned the following errors:

1. The court erred in overruling the motion for a new
trial.

2. In allowing the peremptory writ of *mandamus*.

3. In refusing to dismiss the information in this case.

4. In admitting the testimony of John A. Williams
and John N. Peyson as to what was done at the school
meeting held in said school district on June 30, 1890, and
July, 1, 1890.

The provision of law, sec. 13, chap. 79, Comp. Stats.,
p. 742, under title of schools, that "the tax levied and
collected [under sec. 12] shall be expended under the di-
rection of the district made at the annual meeting, or in
absence of such direction then such tax shall be ex-
pended as the district board of the district may direct,"
undoubtedly gives full authority for the present proceed-
ings, and gave to the voters the authority to appropriate
the money to pay the relators, as contractors, in having
built the school house.   This power is undoubted, and has
not, we believe, heretofore been questioned.   It is suffi-
cient to say that it is a plain, statutory power for pur-
poses necessarily and plainly expressed in the law.

The second objection urged, is that the contract for the
building of the school house is voidable on the grounds:

1. That it was first entered into by a building committee
for the school district; and,

2. That it was not let to the lowest bidder;

3. That the voters could not ratify a void contract; and

4. That the annual meeting of the voters could not adjourn to another day to complete their business, is merely technical and frivolous.

It does not appear, nor is it attempted to be shown, that the contract price to the relators was too high, or that there was any fraud, or undue advantage, attempted or taken by the relators in dealing with the school district. At a meeting called for that special purpose, under sec. 2 of the law (Comp. Stats., p. 740), the voters of the district authorized the building of a new school house, to cost not to exceed $10,000, and to sell and dispose of the old one. All the necessary steps looking to that end were taken, including the title to the ground. The money was duly appropriated, architects' plans adopted, contract entered into with the relators as builders, and the school house was completed at a cost of $8,000.

It was an error, subsequently remedied, and without prejudice to public or private interests, to have appointed a building committee in charge of duties devolving on the district board. But this error was corrected at the annual meeting of the voters, and such progress as had been judiciously made towards providing the new building was considered, approved, and ratified by the voters. The contract with the relators was by the voters directed to be signed as that of the district board. This express power was authorized by sec. 10 of the school law, p. 741 of the statute: "The qualified voters shall have power at any annual or special meeting to direct the purchasing or leasof any appropriate site, and the building, hiring, or purchasing of a school house." The powers of the district board under this authority are clearly defined in sec. 6, subdivision 5, of the law, p. 747 of the statute: "They shall purchase or lease such site for a school house as shall have been designated by the district, in the corporate name

thereof, and shall build, hire, or purchase such school house out of the fund provided for that purpose, and shall make sale and conveyance of any site or other property of the district, when lawfully directed by the qualified voters at any annual or special meeting."

The voters at this meeting, as appears from the record, under authority of the tenth section of the law, cited, discharged the building committee and placed the contract and building in the hands of the district board, where the law placed it. This, we say, was a complete adoption and ratification of all that had been satisfactorily done by the agency of the committee.

In the case of *Everts v. The District Tp. of Rose Grove*, the supreme court of Iowa held: "Though a board of directors have exceeded its powers, in making a contract, its action is ratified by a vote of the electors authorizing it to settle a disputed claim growing out of such contract." (41 N. W. Rep., 478.) And in a like case of the *Bank of Saint Paul v. School District No. 85*, the laws of Dakota provided that school districts may vote annually a tax of one per cent on the taxable property of the district to purchase or lease a site for a school house. The law also provided that school districts may vote a tax not exceeding one-half per cent in any one year for school furniture and apparatus. Under these provisions the appellant issued orders in excess of one and one-half per cent of the taxable property of the district, on which it obtained money of the appellee, and which was used in purchasing a site, and building, and furniture. On the completion of the building, subsequently, such orders were reported, showing that they amounted to less than the one and one half per cent tax, for each of the two years which had elapsed, would have produced, and the district approved the report and accepted and occupied the school house.

The supreme court of Dakota held "that the district had power to issue the orders, and had ratified the action

of the board in issuing them, and was bound thereby."
(42 N. W. Rep., 774.)

The journal and record of a school district, in the hands
of its clerk, though not received from his predecessor in
office, if identified by a former clerk as the record of the
district, is, on its face, sufficiently authenticated.

And such record is evidence of regular notice of a dis-
trict meeting when it states that the meeting was held "pur-
suant to notice previously given in writing, agreeable to
the provisions of the statute." (*Cassidy v. Smith,* 13 Minn.,
122; *Bruggerman v. True,* 25 Id., 123.)

The time and place of an annual school district meeting
need not be designated at the last preceding annual meeting,
and the powers of a school district are the same at a spe-
cial as at an annual meeting. (*Sanborn v. School District
No. 10, Rice County,* 12 Minn., 1.)

In the case of *Robbins v. School District No. 1, Anoka
County,* 10 Minn., 268, it was held that "Instruments in
the form of promissory notes, payable at a future day with
interest beyond the statute rate, executed for the district by
the trustees, for an indebtedness incurred by the district,
are valid between the parties as a contract for forbearance
and a promise to pay the amount specified. But a judg-
ment on them can be enforced only against the fund raised
by levying the amount of tax authorized."

The board, in pursuance of the contract with the re-
lators, issued the warrant, set up in the information, in pay-
ment for labor and material in the construction of the
school house. The respondent had notice to be present
and participate in the proceedings of the board, and when
the warrant was issued to the relators and presented
to the respondent for payment out of funds in his hands
for that purpose, payment was refused without sufficient
cause. The court below found all the facts in favor of
the relators. That finding has the force of the verdict of
a jury, and we find absolutely no evidence to disturb it.

26

(*O'Dea v. State*, 16 Neb., 242 ; *Young v. Roberts*, 17 Id., 426 ; *Romberg v. Hughes*, 18 Id., 579.) It is not important to cite other authorities on the question.

The question of the relators' remedy in this application, we think, has been sufficiently settled in the case of *The State, on the relation of Cook and Van Volin, v. Bloom, Treasurer of School District No. 11 of Nuckolls County*, 19 Neb., 562. This was an application for a peremptory writ of *mandamus* to compel the defendant to pay a director's and moderator's warrant for $3,000, under the same law, under a contract to erect a school district building. The writ was allowed, the warrant was enforced, and it was held that " Money can be drawn from the treasury of a school district only by orders on the treasurer signed by the director and countersigned by the moderator." And this was held, notwithstanding the provisions of sec. 11, of subdivision 3, chap. 79, of the statutes, providing that certain disputed matters shall be referred to the county superintendent, who, if necessary, shall apply for a *mandamus*. This would not, however, prevent a party, in a proper case, from bringing an action in his own name; but it does authorize the application of *mandamus* as a remedy in the present instance.

In answer to the objection that the voters had no power to adjourn the annual meeting to the next day in order to complete its business, we think this is a necessary power and that there can be no sufficient objection to it. (*Hubbard v. Winsor*, 15 Mich., 145; Dillon on Munic. Corp., sec. 207.

As to the opinion and discretion of the legal voters of the school district on this question, we cite the following proceedings :

"At a special meeting of school district No. 11 of Dakota county, state of Nebraska, and held, pursuant to a call, at the Cowles building, in said district, on the 21st day of August, 1890, at 2 o'clock P. M., moderator in

the chair.  Minutes of the two last meetings were read and approved.  The object of the meeting, as stated on the notice, was announced by the chairman to be:

"First—To read, examine, and approve the minutes of the annual school meeting held on the 30th day of June and the 1st day of July, 1890.

"Second—To examine the school building now under process of erection, in said school district.  To more fully examine and consider the contract entered into, by the said district with Allen & Jenkins for the building of the same and again ratify said building and contract, as may be deemed best by said legal voters.

"Third—Whereas, Nick Maher, the treasurer of said school district, has wrongfully and unlawfully refused to pay orders duly and regularly drawn by the moderator and director of said school district, without any excuse or just cause therefor:

"Action will be taken by said legal voters for the purpose of taking proper and legal steps to declare said office vacant, and remove Nick Maher therefrom, and such other business as may properly come before said meeting.

"On motion made and seconded it was voted

"That the contract heretofore entered into by school district No. 11 of Dakota county, Nebraska, with Allen & Jenkins be ratified and approved.

"A division of the house being called by the chairman, on the adoption or rejection of said motion, twenty-nine (29) legal voters of said district voted aye, and none voted nay, and the motion was thereupon declared carried and adopted.

"On motion made and seconded it was voted

"That the legal voters of school district No. 11 of Dakota county, Nebraska, approve of the building, both in labor and material, now in course of construction by Allen & Jenkins, under the contract entered into by the district.

"A division of the house showed twenty-nine in favor of the adoption of said motion and none against, and the same was declared carried and adopted.

" On motion made and seconded it was voted

" That the moderator and director notify the county superintendent to take steps immediately to compel the treasurer to pay over the money belonging to the district, on order, duly and legally drawn therefor by the moderator and director, or in the event of his not doing so, to declare said office of treasurer vacant, and to proceed against his bondsmen to recover the money belonging to said district that should be in his hands.

"A division of the house showed twenty-nine votes in favor of the adoption of said motion and none against the same, and said motion was declared carried and adopted.

"On motion it was voted

"That the moderator and director issue warrants necessary to carry on the work on the school house and negotiate the same to the best advantage, so that the construction of the same may not be delayed.

"A division of the house showed twenty-nine votes in favor of the adoption of said motion, and none against, and the same was declared carried and adopted.

"Adjourned.          JOHN A. WILLIAMS, *Director*.

"STATE OF NEBRASKA ⎱ ss.
  DAKOTA COUNTY, ⎰

"I, John A. Williams, director of school district No. 11 of Dakota county, Nebraska, do hereby certify and declare upon oath that the foregoing is a true and correct copy of the records of a special meeting of said district, held on the 21st day of August, 1890, as shown by the records under my hand, and in my possession.

"JOHN A. WILLIAMS, *Director*.

"Subscribed in my presence and sworn to before me this 23d day of September, 1890.

    "[SEAL.]                    WIN S. WHITE,
                            " *Notary Public.*"

It has been shown that the voters of the school district have equal authority at an annual or a special meeting to transact the affairs presented; that they were nearly unanimous in their action therein; that their duties and privileges were exercised in accordance with law; that they had contracted with the relators in a lawful manner, and on lawful terms, and had delivered to them lawful warrants on the treasurer of the school district, which he is obliged to pay on presentation, with lawful interest for any period of delay.

The errors assigned in this case are overruled. The judgment of the district court is affirmed, and the relators will take their peremptory writ from this court.

JUDGMENT ACCORDINGLY.

THE other judges concur.